May it please the Court, Heather Gurina, on behalf of Plaintiff and Appellant James Grill, I'd like to reserve three minutes for rebuttal. This case presents several issues. First, the District Court erred in finding it lacked jurisdiction because the evidence below established that Grill still owned part of the property that was subject to the SUP. Additionally, the District Court erred in failing to consider the additional evidence to the case. Let's just talk about that for a minute. Sure. Okay. I gather the problem is that the bridge in question and the road in question goes to the piece of property that's been foreclosed on, directly goes to it, right? The the In order to get to the other piece of property, you'd need some additional something. We know from the record that Mr. Grill actually has an express easement, but regardless of whether or not he needs permission from the owner of Lot 2, he's always going to need permission from Forest Service to access the road that goes through National Forest Lands. And to the extent he decides he wants to build a bridge, he needs the SUP in order to access it. And so if a road goes through Forest Service lands and then enters a parcel of property, and that parcel, whether it's divided into one lot or 400 lots, needs access to that road, and it's landlocked otherwise by Forest Service land, we know that Forest Service is required to work with them to give access to that property. And so in this case, we know that Mr. Grill actually has an express easement to use the road that goes over Lot 2 into Lot 1. Additionally, even if he didn't have the express easement, he would have a right to an implied easement because he has ---- Kagan. How do we know? I didn't notice in the record that there was any indication that he had a ascertained already ascertained way to get from Lot 2 to Lot 1. Yes. It's in his ---- if you look at the next issue, which is the reconsideration motion, Mr. Grill, when he realized that the court did not appreciate that he still owned Lot 1, that the court wanted to know that he had a way to get there. And so he attached as part of the record that he has an express easement to use the road that crosses over Lot 2 into Lot 1. And that is at ER 91 through 93. And that's when the district court recognized that he did, in fact, have a valid claim, that his claim wasn't moot, and there was, in fact, relief that the court could grant. And so, therefore, it was inappropriate to refuse to rule on the other issues and to grant the government's motion because he has a recognizable interest. He has land that abuts the Forest Service national land either from the north, if he wanted to cross over the Yuba River, which we know from the environmental impact report Forest Service is determined would have the most impact, and then from the west, which was to come over Scotchman Creek and use the Scotchman Creek Road, also would require a bridge. Finally, the district court erred in denying the motion for reconsideration because it improperly focused on whether this was new evidence. Instead, the court should have evaluated whether the decision was manifestly unjust. It is clear that denying Grill any relief when his claims were valid is manifestly unjust. Counsel, how is it unjust to say that he waited too long to seek a bridge and didn't get permits required for that? The injustice argument relates to whether or not there's an active case in controversy for which the court can grant relief. That's the issue that we're dealing with in the motion for summary judgment that was filed by Forest Service. So the only thing we're looking at is whether or not there is any relief that the court can grant. And because we're dealing with mootness, we're talking about a very, very strict standard that the court should only find that it's moot in very, very rare cases. So when the court determines that he does, in fact, have land, and that land does abut Forest Service land, they find that he essentially continues to have standing. And so it's unjust not to address his due process claim and his administrative procedure claims.  Thank you. You're welcome. I thought you were saying it would be unjust not to give him a further permit to develop his land. That goes to the second issue, which is that the court should have granted Mr. Grill's motion for summary judgment for violation of his Administrative Procedure Act rights and then also for violating his due process rights. Okay. I think that's really what the issue I was trying to address in my question. Yes, Your Honor. Assuming it's not moot and he has standing, which I know is debatable, but assuming that he does have standing and we consider all the evidence, why didn't he wait too long to try to get permits for his bridge? For two reasons. First is that the SUP is not just for building the bridge, nor does the SUP obligate him to build a bridge. The SUP specifically states it's to gain vehicle access to private property. And so it both gives him access to the road that runs through Forest Service property and then further gives him the ability to build a bridge, and it also gives him the ability to add a 6-inch conduit line. Nowhere in the conditions that are included in the SUP does it require that within the first 10 years that he has to actually build the bridge. It's just that he's entitled to have land. And the terms in the SUP that specifically relate to renewal don't say you can renew if you've started the process to build the bridge. What it says is if the permittee still needs the road for the purposes for which the permit was granted, which was access to the road, the permittee will be reissued for successive periods of 10 years. So, so long as he has property and he needs the road to access his property, then Forest Services is obligated to reissue the SUP. And the way that we balance the equities here is that at the time that the SUP is reissued, it's at that point that the government has the ability to add new conditions. So they can update things like the report. So that if he hasn't built the bridge yet based on the original SUP, they can add all these extra things that they used to prevent him from building the bridge in September and then prevented him from providing with any process in order to contest whether or not it was appropriate for them to impose new conditions based on the original SUP. Well, as I understand it, their position in September was that the bridge he was now proposing was not the bridge they had approved. That's what they said. And if that was the case, then they should have provided him with process to either submit different plans or to challenge that the bridge that he was proposing was, in fact, the bridge that was approved and attached to the SUP. The problem here is that they just said, no, stop working. You don't get to do anything. Wait until you hear from us. And that is the injustice here. And then they compound that by just refusing to renew it. Instead of renewing it and then engaging in a process. What should have happened was they should have sent him a notice saying that his plans, which they had previously approved in July, in September they determined that they didn't like those plans. And then they should have provided him with a process so that he could contest whether or not those plans were compliant. And then he could either correct those plans or overturn the determination and then proceed with building the bridge. But here he was given none of those options. And that is why he seeks relief from the court. Can you tell me again where in the record this E's mention is? Of course. It is ER 91 through 93. It's attached to his objections to the findings and recommendation. And I'd like to point out that when we're dealing with mootness, it's the government's burden to show that Mr. Gryll had, that the court could grant Mr. Gryll no effective relief. And when they presented the issue to the court, they attached a map, which I have attached to ER 160, which specifically shows that there's three different parcels identified by three APN numbers. And then they only provide foreclosure documents for one of those parcels. And the government never pointed out to the court that Gryll still owned property, even though it was fully aware that Gryll owned property, and it talked about that in the next three arguments that they raised in their motion. But he didn't point it out either, so. But he's a pro per. If you look at the ---- But he knows what he owns better than they know what he owns. They knew what he owns. What he didn't appreciate was the argument that they were raising, because he addressed his continued ownership of Lot 1 and 2. If he had been represented by — if I had been representing Mr. Gryll below, I would have seen the argument, and my response would have said, this is ridiculous. What we have here is exactly what we have in Jones v. Blanas, which is when you have a pro per and he sees a magistrate decision, a finding and recommendations, and it's at that point that he realizes what evidence the court needed in order to understand what it was to avoid summary judgment, that it's an abuse of discretion for the court not to consider that additional evidence, because as a pro per, we provide a more lenient standard. And so, therefore, as soon as he appreciated that the court did not understand that he still owned property, he presented the additional evidence. Additionally, one of the other points that's important is that he owns Lot 1, which is covered to the north by the South Hoover River, and then on the west by Scotchman Creek. So his interactions with Forest Service are not going to end. And so even if you're going to say that we have a problem with reaching the current SUP, it's still appropriate. The court can still grant relief, because any time he files an application, we know from reviewing the record that Forest Service is not providing him with due process. And the magistrate correctly noted that he wasn't provided any process. And so this court could rule that in dealing with these applications, whether it's reviewing the bridge, the renewal, or a new application, that it's obligated to provide him with all of the Administrative Procedure Act review and notice requirements and with due process of law for the review. I'm going to reserve the rest of my time. Thank you. Good morning. My name is Erica Kranz. I'm representing the Federal Parties in this matter. This case is about a special use permit for the construction of a bridge and a road on Forest Service lands. Mr. Grail never built the road. He never fulfilled the conditions that would have allowed him to build the bridge or the road. And he no longer owns the property to which the road would lead. Now, that's as far as you need to get. For all of those reasons, this case is moot. The district court was correct when it was not. Sotomayor, what about this notion that he does, in fact, have a way to get to get that he does own Lot 1 and that he has an easement on Lot 2 that would allow him to get to Lot 1 if he could build a road on Lot 2? So he raised the Lot 1 issue for the first time. I know that. Right. I'm just curious about the representation. And the easement, I mean, he attached that to his objections in the district court, but he didn't say anything about it, didn't say anything about it at summary judgment, didn't say anything about it in his opening brief here. You know, we hear about this for the first time in reply. So, you know, I'd like to preface my remarks that way. You know, if he has an easement, which we don't know if that easement survived the foreclosure of the southern property, the he took out the ---- Well, I couldn't tell what the easement, what it's for. Right. I mean, it's just it's untested, right? Like, there hasn't been any, you know, just briefing about this easement, nothing at this point. It's raised for the first time here. If Mr. Grill and the southerly owner want to work together to file a new application for a road, here we are 10 years later, of course, there's going to be new NEPA that would be required. They're welcome to do that. He's been welcome to file a new application for the last 10 years and has not done so. And what he would get if he did file such an application is the same thing he would get if this Court found that there was an APA violation and remanded for further proceedings. I mean, he would ---- essentially, the result would be the same. So, you know, we contend there absolutely is no ---- Well, as I understand it, what his claim now is that he should have gotten a continuation of the SUP, even if with modifications. Right. And that would still trigger additional environmental review. I mean, it essentially would be ---- What he got was a determination that he had to apply for a new SUP. Is that the difference? Well, even renewals. A renewal of an SUP is subject to additional environmental review. The Forest Service regs on this say if there's ---- if the special use permit is still being used, meaning what we contend here is if there was a road and bridge that were constructed and were still being used, a special use permit can be renewed if there's new information or circumstances, which there clearly are here. There new environmental review can be required. That's 36 CFR 251.64. But you would say it was never being used, and therefore it wasn't still being used. I'm sorry? You would say that the extension doesn't apply anyway because it wasn't still being used because it was never used. That's right. So our position and the Forest Service's position at the time, 10 years ago, was that because Mr. Gurl had not actually constructed the road and the bridge, there was not an existing use that would trigger the renewal term in the special use permit. So if you think about it, if he had built the bridge in year three and seven years later he's still using it, it makes sense to have a permit that would renew so that he could continue maintaining that existing road, continue the existing use. What he's asking for here is basically a blank check 10 more years, maybe 10 more years after that, to construct a road without additional environmental work being done. That just can't be right. That's not how it works. What language is there in the renewal provision which supports your thesis that something had to concretely have happened as a predicate to allow him to get the renewal? What is there about the renewal term? Well, it talks about the use of the permit. And the permit itself says the use is What does it say that would allow him to renew the permit? It says the actual language in the special use permit. Does it condition his renewal upon certain factors? It said, unless the permit is terminated in accordance with the provisions of this permit, it shall expire and terminate on December 31st, 2007, at that time if the permittee still needs the road for purposes for which the permit is granted. So still needs the road, right? I read that to mean a road that has been built. The permit will be reissued for successive periods of 10 years. At the time of reissuance, the terms and conditions may be modified and new conditions or stipulations added at the discretion of the Forest Service. So it has to show that he still is using the road or that he has access to the road? I'm just trying to be clear about what that trigger is. That's right. I think what it means is that there is a road. There is a road. Yes. And today there is not a road. And in 2007, there was not a road. There's never a road. There was never a road. I mean, there was a historical road that he was proposing to rehab, but it was not a usable road for vehicular access. But he also contends that essentially there still was an SUP at the time he came in with his, I gather, fairly bare-bones bridge proposal, which the Forest Service said was not the one, was not consistent with the original proposal. And he's complaining as well about having that one not sort of cut off before he could litigate or adjudicate or complain about whether he should be able to build ways for this to be built. So there were a couple problems with Mr. Grill's proposal. One was that the bridge he was proposing did not meet the requirements of the permit, which incorporates the environmental assessment that has certain, you know, requirements for the span of the bridge and avoiding impacts in the stream. The other problem was that his California State streambed alteration permit had been revoked. And so his application, if you want to call it that, was facially deficient. It could not be approved. Yes, the biggest problem was there was no way he was going to get a road built by the end of the year. That's right. And so in this October letter, the Forest Service looking ahead, saying it's really, you've run out of time here. You started your process really at year nine and a half, and now we're at nine and three quarters. You're not going to get done by the end of year 10 or, I guess, by the 10th year. We can't renew your permit. You don't have a road. Come, let's talk about how you want to pay for, under our cost recovery regulations, the new environmental review that's going to be required if you still want to do this. And so, really, the permit expired by its terms. I mean, there was no road. There was no new decision terminating the permit. The permit just expired by the terms that had been in place for 10 years and that Mr. So, you know, I think the... But as to the easement, I mean, I just, to go back to it for a moment, you don't have a, you don't know either whether that easement as described actually is a road that would get through a lot to and a lot would. No, we don't believe there is a road, certainly, along that easement. We don't know if the easement survived the foreclosure, if he's actually able to use it. I mean, we just... I couldn't even tell whether the easement was in a particular area, and I couldn't tell whether that easement was the right area. You don't know either? No. Essentially, on the reconsideration, you're just standing on the fact that it was too late. That's right. And, I mean, you know, the district court clearly gave consideration to the fact that Mr. Grohl was pro se. He, the court, you know, explained that he clearly understood what was going on with the government's, you know, raising this jurisdictional issue. He responded to the jurisdictional in other ways, trying to assert sort of other kind of continuing interest in the special use permit. He never raised this Lot 1 issue. He never raised this easement issue at summary judgment. And it was well within the district court's discretion to draw a line. I mean, he's essentially asking you to say the district court doesn't have any discretion. It always has to take new facts into consideration from a pro se plaintiff, and that can't be right. So I would ask that you affirm the district court's... Um, which is not the facts in the underlying case, but a change in facts, presumably. Um, and I'm not sure whether the, and ultimately a question of jurisdiction, it seems a little peculiar to say, well, we decided we don't have jurisdiction and we're not going to figure out whether we actually do. Well, you know, this wasn't, to be clear, it wasn't a change in facts between summary judgment and the objections. It was a, you know, oh, I just remembered. And I mean, I submit that the magistrate judge and the district judge were in the best position, um, to weigh whether they should use their discretion to consider this late revealed information. Um, you know, as Judge Berzon, you, you pointed out before, Mr. Grill was in the best position to know what he owned. I mean, the Forest Service didn't know that he, uh, had even subdivided his property, had mortgaged part of it. He didn't tell the court that the foreclosure was happening. Um, once the government realized that was happening, it notified the court, and Mr. Grill, for whatever reason, he did not do so. Um, you know, I, I, I think the theme of this case is there's been a lack of diligence. There was a lack of diligence in building the bridge and then in, uh, pursuing his case in district court. And in this case where you have these new things coming up in the reply brief, I think it, we, we see a pattern, and, um, I think the district court, um, you know, it applied its, its discretion in a reasonable way here. Counsel. Yes. Counsel, if, if, uh, if we affirm the district court here, uh, what's the process for Mr. Grill to apply for a new, uh, special use permit, assuming there's a reason to do so because of this, uh, argued easement? You know, I don't know the exact process, but whether he wants a road that would lead directly to property he still owns or whether he wants to coordinate with the new owner of lot two so that they can both seek access that would benefit both of them, um, they can contact the Forest Service and, and get that process started. It's, it's been, it's been available to him this whole time. Dave, thank you. If there are no further questions, I, we ask that you affirm on, uh, jurisdictional grounds. So I'll start. What does he lose by starting from scratch? Let me know realistically, uh, how he would be disadvantaged if he sought a new permit now. If you look at the administrative record, it starts back in 1992 and they don't issue his SU, original SUP until sometime in 1998. And it is through that process that we know that it took them six years to issue the original SUP, which included a specific right that it would automatically renew so long as he needed. So he has a leg up now and if he started from scratch, he may have to wait another six years to get the other leg up, right? It, it, it may take six years. It may take him longer. Because what we know from where we are now is that when Forest Service disagrees with the information they've provided, they don't provide him with process. They don't provide him with notice of how he can challenge it. And I think it's important to note that if you look at the SUP and the plain language that was referenced earlier, it said, and I'll quote it for you in just a moment. The SUP was issued for the use of national forest lands for construction, reconstruction, maintenance, and use of the road within the Tahoe National Forest for purposes to gain vehicle access to private property that's landlocked by the National Forest Land Systems. It says that if the permittee still needs the road for the purposes for which the permit was granted, then the permit will reissue for successive 10-year periods. That's mandatory. And all he needs to show is that he has property that's landlocked. This is a historic road. My understanding is that it is, in fact, an existing road. It may not be a nice road, but it is a real road that exists in the ground. Each person that has, has property has to separately get an SUP. It's non-transferable. And what we have here is a case where he is asking the Court for relief. The motion that is presented by the ---- Sotomayor, there's a road, but there's no bridge getting to the road, right? There's nothing in the permit that requires him to build the bridge in order to get the renewal, because bridges are expensive. I'm sure all of us could not ---- But he's not going to have access without the bridge. But he couldn't use the road either. If he wants to. Now, what I've understood is that it's a creek. So at one point, it may be very small or it may be very large. And so there's what they call seasonal bridges, where you, like, pick them up and set them down, and then he can drive over the bridge. And he's allowed to do that when he had the SUP. It's just when there was a large flow of water, then he couldn't and he would need a larger bridge. But what this Court is deciding is whether or not he was provided due process. And this is a motion for summary judgment. And what we have here is that if it is unclear on the record when we're reviewing whether or not the Court had jurisdiction, then it should be remanded back. Could you please explain where the due process issue arises? Is that under the APA or NEPA? Or is it part of your Bivens issue that was raised in the briefing? So the due process has to do with how the Forest Services dealt with stopping his construction in September and dealt with not communicating with him about his ability to contest the renewal. And that is both that they were required to provide him with notice and a process to review. He specifically asked for that, and it wasn't provided to him. And that also violated his Fifth Amendment rights. On the Bivens issue, that's whether or not the Court abused its discretion in not allowing him to amend. And the Court didn't exercise its discretion because it used the words may and probably, which shows that it didn't fully evaluate whether or not it was there. When we're looking at the case, we know that there was, in fact, a recognizable constitutional right, which is his right to due process, that that right existed at the time. It was violated because they terminated both his use during the SUP and afterwards. And there are sufficient facts that he can plead that the individuals at Forest Service were aware that he had due process rights, and they chose not to provide them to him. And so when we're looking from a pleading standard, there's sufficient facts to So when we're looking... No, I'm... Sure. With regard to... Well, I guess you're out of time. All right. Thank you very much. Thank you. The case of Grill v. Quinn is submitted, and we will go to the United States Combatant Futures Trading Commission v. Crombie.
judges: Gould, Berzon, Block